· No. 74,615

In the Matter of PHILIP D. GORDON, *Respondent*.

(908 P.2d 169)

Opinion filed December 8, 1995.

*Mark F. Anderson,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

No appearance by respondent.

*Per Curiam:* This is an uncontested attorney discipline proceeding involving respondent Philip D. Gordon, an attorney licensed to practice law in Kansas. Three separate complaints involving seven separate incidents were filed by the Disciplinary Administrator claiming that respondent had violated MRPC 1.1 (1994 Kan. Ct. R. Annot. 292) (competency), 1.2 (1994 Kan. Ct. R. Annot. 295) (failing to abide by client's decisions), 1.3 (1994 Kan. Ct. R. Annot. 297) (diligence), 1.4 (1994 Kan. Ct. R. Annot. 302) (failing to reasonably inform client), 1.15 (1994 Kan. Ct. R. Annot. 332) (failing to safekeep property), 3.2 (1994 Kan. Ct. R. Annot. 347) (failing to expedite litigation), 3.4 (1994 Kan. Ct. R. Annot. 352) (fairness to opposing party and counsel), 4.1 (1994 Kan. Ct. R. Annot. 360) (untruthful in statements to others), 8.1 (1994 Kan. Ct. R. Annot. 376) (failing to disclose facts), and 8.4 (1994 Kan. Ct. R. Annot. 379) (misconduct that adversely reflects on fitness to practice law). Respondent answered the formal complaints and admitted a majority of the facts alleged.

The complaints were consolidated and heard by the hearing panel on September 30, 1994, and November 9, 1994. The hearing panel made the findings and conclusions set out in this opinion.

B5733

Theresa and Gerald Skaggs retained respondent to represent them concerning a defect in the swimming pool of a home they purchased. Respondent submitted a demand letter to the realtor on October 17, 1991. A response from the realtor denying the

demand was sent to respondent on November 1, 1991. Respondent did not keep the Skaggs advised, by telephone or in writing, of the status of their case. The Skaggs tried unsuccessfully on numerous occasions to contact respondent by telephone. In April 1993, Theresa Skaggs sent respondent a letter requesting information concerning the status of the case. In July 1993, after the Disciplinary Administrator notified respondent that this complaint had been filed against him, Mrs. Skaggs received a copy of the demand letter and the realtor's response.

In his answer to the formal complaint, respondent admitted each allegation. At the hearing, he acknowledged responsibility for the amount the Skaggs spent to repair the pool ($1,500).

The hearing panel found that respondent violated MRPC 1.3 and 1.4.

## B5737—Count I

Joyce Meredith retained respondent to represent her in her divorce. Around May 22, 1992, counsel for Ms. Meredith's husband received a letter from the respondent stating that his client was seeking an emergency divorce. Included with the letter was a petition for divorce and entry of appearance. On May 28, 1992, counsel for the husband returned the signed entry of appearance, some discovery documents, and a letter to respondent expecting that the divorce would be filed by respondent. On June 5, 1992, counsel for the husband discovered the divorce had not been filed. Counsel then contacted respondent concerning the filing of the documents on June 15, 1992. Respondent informed counsel that he had filed the pleadings that day. The documents were in fact filed one week later on June 22, 1992.

On May 28, 1992, counsel for the husband submitted to respondent a request for production of documents. On July 9, 1992, counsel wrote to respondent requesting a response to the discovery. Respondent did not answer. On August 13, 1992, counsel prepared a motion to compel a response but agreed not to file the motion after respondent promised to mail the material on August 14, 1992. Respondent did not comply until August 18, 1992.

A final hearing on the divorce was held September 22, 1992. The parties entered into an agreement, and respondent was ordered by the judge to prepare a journal entry of settlement. When respondent failed to prepare the journal entry, counsel for the husband attempted to contact respondent on numerous occasions. The husband was inconvenienced by the delay because Ms. Meredith would not allow him to pick up the property awarded in the settlement and local police officers refused to help the husband obtain the property without a certified copy of the journal entry. On November 4, 1992, counsel for the husband sent a proposed journal entry to respondent pursuant to Supreme Court Rule 170 (1994 Kan. Ct. R. Annot. 174). Respondent did not answer or object to the proposed journal entry. The trial judge signed the journal entry submitted by the ex-husband's counsel on November 18, 1992.

Ms. Meredith attempted to contact respondent on numerous occasions after the September 22 divorce hearing to request a copy of the divorce papers. Respondent did not return his client's telephone calls. On April 12, 1993, Ms. Meredith sent a letter to respondent requesting a copy of the divorce papers no later than April 30, 1993. She received the papers requested after she filed a complaint with the Disciplinary Administrator in May 1993.

Respondent admitted most of the allegations. The hearing panel found that respondent's conduct violated MRPC 1.3, 1.4, and 8.4(c).

## B5737—Count II

Shelley Bontrager retained respondent to represent her in a post-divorce motion by her ex-husband to reduce his child support obligation. Without contacting his client, the respondent agreed to child support in an amount of $75 per month. Counsel for the ex-husband mailed a journal entry to the respondent on July 17, 1992, and again on August 10, 1992. Respondent did not return the document to counsel. On August 18, 1992, the ex-husband's counsel submitted the journal entry to the district judge because respondent had not signed the agreed order. The judge signed the order on August 21, 1992.

Ms. Bontrager was unaware of the terms of the August 21, 1992, journal entry. When Ms. Bontrager discovered the order, she hired new counsel. Her new counsel sent letters to respondent on four occasions between February 2, 1993, and August 17, 1993, requesting Ms. Bontrager's file and an explanation of why respondent had agreed to the support order without Ms. Bontrager's approval. Respondent did not reply to the requests for information. Ms. Bontrager had to pay her new counsel $260.

Respondent admitted that he was retained by Ms. Bontrager, he told the ex-husband's counsel to prepare a journal entry for him to review with his client, and he did not file an objection to the proposed journal entry. Respondent also admitted that he did not immediately send Ms. Bontrager's file to her new counsel, but the file ultimately was turned over and respondent has tried to fully cooperate with new counsel.

The hearing panel found that respondent's conduct violated MRPC 1.2, 1.3, and 1.4.

### B5737—Count III

On April 2, 1992, respondent filed a personal injury action on behalf of Nora Pauline Houting. On May 5, 1992, an answer was filed. Also on May 5, the defendant in the action served on respondent a request for a statement of monetary damages, request for production of documents, and written interrogatories. On September 9, 1992, after sending two letters to respondent asking when he would comply with the discovery requests, the defendant filed a motion to compel discovery. Respondent filed no response to the motion to compel. On November 12, 1992, the district judge signed an order granting the defendant's motion to compel discovery and ordering respondent to comply with the discovery requests within 10 days. Respondent did not comply with this order.

On January 6, 1993, the defendant filed a motion to dismiss Ms. Houting's action for failure to comply with the discovery order. The district judge dismissed the action on February 24, 1993. Seven months later a motion to set aside the order of dismissal was filed by James Swoyer, an attorney associated with respondent. Mr. Swoyer asserted in the motion that respondent had failed to keep

the firm informed and had misrepresented to the firm the status of the client's case. Mr. Swoyer ultimately settled Ms. Houting's case.

During the investigation of the disciplinary complaint filed by Ms. Houting, respondent acknowledged receipt of the pleadings in the personal injury case and stated that he was working on other matters and that he "just let it slip by." Respondent admitted Mr. Swoyer filed a motion to set aside the order of dismissal and settled the case.

The hearing panel found that respondent's conduct violated MRPC 1.1, 1.3, 1.4, and 3.4(d).

### B5772—Count I

Ronald and Kay Griffitt retained respondent to collect a $20,000 personal loan they had made to Curtis Sturgeon. Respondent wrote a demand letter. When payment was not received, respondent promptly filed an action in May 1991. Shortly after he was served with the civil suit, Mr. Sturgeon filed for Chapter 13 bankruptcy, listing the Griffitt loan as a debt. Respondent agreed to file pleadings and documents on behalf of the Griffitts in the Sturgeon bankruptcy proceedings. Respondent failed to file any pleading, proof of claim, or complaint against dischargeability of the debtor on behalf of the Griffitts or request or schedule a hearing in the bankruptcy. Respondent failed to return numerous telephone calls from the Griffitts. When the Griffitts did speak with respondent, he lied about the status of the bankruptcy case. Respondent agreed to send copies of the bankruptcy documents but failed to do so.

After 2 years had elapsed, the Griffitts wrote a letter to respondent, requesting a status report. When they received no response, they hired another attorney to represent them as creditors in the Sturgeon bankruptcy proceedings. The new attorney filed a proof of claim and objection to the amendment of the debtor's plan. Because the statutory time period for objection had expired, the Griffitts' claim and objection were dismissed for lack of jurisdiction.

At the time the formal complaint was filed, a legal negligence claim was pending against respondent and the errors and omissions carrier of the Swoyer law firm, respondent's former employer.

In his answer, respondent admitted all the allegations except the assertion that he lied to the Griffitts. He stated that he intended to complete the work for his clients but was unable to do so because he received other work from his former employer.

The Swoyer firm's carrier paid $4,000 to the Griffitts and the Griffitts wrote off $9,000 as a bad debt. The hearing panel found that the Griffitts lost $7,000 due to respondent's mishandling of their legal affairs. The panel found that respondent's conduct violated MRPC 1.1, 1.3, 1.4, and 4.1.

B5772—Count II (formal complaint)/B5775 (panel report)

Respondent was retained by Gary Haflich in September 1992 for advice on a debt of $20,000 in medical bills incurred due to a heart attack. By January 1993 Mr. Haflich had brought his mortgage payments current, and he gave respondent the necessary documents for the respondent to file a bankruptcy to discharge the medical debt. In February and March 1993 Mr. Haflich was sued by the hospital and ambulance company for debts resulting from the heart attack. Mr. Haflich gave the summons and petition in each case to respondent, who agreed to represent Haflich in the civil suits. Respondent failed to enter an appearance or file pleadings or motions in the civil suits. The hospital obtained a default judgment. One or two of Mr. Haflich's paychecks were garnished. After a garnishment, Mr. Haflich contacted respondent, who informed Mr. Haflich that he would attempt to have the garnished amounts repaid. Mr. Haflich's Chapter 7 bankruptcy petition was filed on April 23, 1993. No more garnishments were issued. However, no refund of the earlier garnishments was obtained.

Respondent advised Mr. Haflich to keep his home mortgage and car payments current so that those debts could be reaffirmed. After Mr. Haflich made late mortgage payments, the mortgagor declined to accept tender of the payments and issued four checks totalling $1,208 back to Mr. Haflich in care of respondent between June 17 and September 13, 1993. Despite a demand from Mr. Haflich, respondent did not return the checks until September 23, 1993, after the complaint was filed with the Disciplinary Administrator's office.

Respondent asserted that he did not file pleadings in the civil suits because the suits were listed in the bankruptcy petition and were to be dealt with in the bankruptcy. Respondent attempted to get the money garnished from one of Mr. Haflich's paychecks returned to the client. Respondent stated that he had informed Mr. Haflich that the bankruptcy trustee might claim the money and that the bankruptcy court was informed Mr. Haflich's wages had been garnished. Respondent explained that the checks from the mortgage company were not returned until September 23, 1993, because he moved out of his former employer's office on June 16, 1993, and did not get fully moved into his new offices until September 1993. He stated that he tried to contact Mr. Haflich several times to explain the situation.

The hearing panel found that respondent's conduct violated MRPC 1.3, 1.4, 1.15, and 3.2.

### B5931

Respondent represented Delbert Lee McHenry and Shirley Yvonne McHenry in an adversary action filed in the McHenrys' bankruptcy. The plaintiff in the action, Leavenworth County Co-op (Co-op), served a summons and complaint on the McHenrys and respondent. The McHenrys filed an answer to the complaint on May 26, 1993. At a pretrial conference on June 30, 1993, the discovery deadline was set for August 16, 1993, and August 30, 1993, was set as the date for the parties to amend the pleadings. On July 6, 1993, the Co-op served interrogatories and a request for production of documents. Responses were due 30 days after service. On August 30, the Co-op filed an amended complaint which alleged that the McHenrys had failed to respond to discovery requests. A final conference was held on September 27, 1993. Neither respondent nor the McHenrys appeared. The Co-op filed a motion to compel discovery and a motion for default judgment on September 23, 1993. The Clerk of the Bankruptcy Court set a November 2 deadline to respond to those motions, and a hearing was to be held November 12, 1993, if objections were filed.

On November 4, 1993, respondent filed a motion to file an answer to the amended complaint out of time, a response to the

motion for default judgment, and a response to the motion to compel discovery on behalf of the McHenrys. Respondent indicated to the judge that he would submit the completed discovery by November 5, 1993. Respondent failed to do so. On November 9, 1993, the Co-op filed a reply to respondent's responses. The Co-op again requested a default judgment or, alternatively, a discovery deadline and sanctions. The motions were heard on November 12, 1993. Respondent and the McHenrys failed to appear. The court granted the motion to compel discovery and took the motion for default judgment under advisement. On December 8, 1993, the court declined to grant a default judgment or impose sanctions against the McHenrys for the delay and inaction of their attorney, noting that the McHenrys were not responsible for respondent's failure to appear at the hearings. The court sanctioned respondent by granting judgment to the Co-op of $1,359.30, the amount of attorney fees Co-op incurred in trying to force respondent to participate in the adversary proceeding. Also in its December 8, 1993, order, the court noted that the McHenrys had been sanctioned $500 for failing to respond to several letters sent to respondent concerning a truck and seeking information about the McHenrys' accounts at financial institutions.

Respondent admitted each allegation of the formal complaint. Respondent stated he had paid the monetary sanctions of $500 and $1,359.30. He also noted that the McHenrys had obtained other counsel in August 1994 and that he had turned over the file to new counsel, apologized orally and in writing to the McHenrys, and charged them no attorney fees for his services.

The hearing panel found that respondent paid the sanctions in August 1994. The panel noted that Jan Hamilton, the attorney who took over the McHenrys' bankruptcy cases, testified that the lists of property on the bankruptcy schedules were inaccurate. Items listed in the schedules as owned by the McHenrys were subject to security interests of the Co-op, and respondent had advised the McHenrys against correcting the collateral inventory. Also, respondent had converted the McHenrys' Chapter 13 filing to a Chapter 7 filing, exacerbating their problems by opening the door for the Co-op's adversary proceeding. Mr. Hamilton concluded that an

amended plan in a Chapter 13 proceeding would have been the preferred approach. The adversary proceeding was eventually settled by Mr. Hamilton by payment of $7,000 from the McHenrys to the Co-op. Because of respondent's mishandling of their bankruptcy, the McHenrys incurred legal expenses of $2,027.73 to Mr. Hamilton. The panel noted that respondent had not turned over the McHenrys' file until he was subpoenaed for an examination by Mr. Hamilton.

The hearing panel concluded that respondent's conduct violated MRPC 1.1, 1.3, 1.4, 3.2, 3.4, 8.4(d), and 8.4(g).

Panel's Recommendations

The hearing panel found by clear and convincing evidence that respondent's conduct violated MRPC 1.1, 1.2, 1.3, 1.4, 1.15, 3.2, 3.4(d), 4.1, 8.4(c), 8.4(d), and 8.4(g).

The hearing panel noted in mitigation that respondent's mother was diagnosed with breast cancer in 1987 and her condition substantially worsened in 1990; she declined steadily until her death in 1994. Respondent had shared caregiving responsibilities for his mother during this time. The panel also noted that respondent left his association with the Swoyer firm in June 1993 and opened his own office. He had no secretary for an extended time, was disorganized, and had difficulty with calendaring. Prior to opening his own office, respondent had always been an associate and someone else had been responsible for the organization and structure of the office. Respondent also argued in mitigation his preoccupation with an unsuccessful run for the Jefferson County Attorney post in 1992, but the panel gave this factor very little weight. Finally, the panel noted that respondent had no prior record of disciplinary offenses and that his difficulties seemed to have increased as the level and degree of supervision over his work decreased.

The panel found a pattern of misconduct and multiple serious offenses and that even in connection with the disciplinary matters, respondent had not been timely, thorough, or thoughtful. The panel found that respondent's proposed plan of probation, restitution, and office organization was insufficient to protect the public. The hearing panel recommended that respondent be sus-

pended indefinitely from the practice of law and that his reinstatement be contingent upon restitution in the amount of $1,500 to the Skaggs, $260 to Shelley Bontrager, $7,000 to the Griffitts, $371 to Gary Haflich, and $9,000 to the McHenrys.

We hold that the findings and conclusions of the hearing panel are supported by clear and convincing evidence.

IT IS THEREFORE ORDERED that Philip D. Gordon be and he is hereby disciplined for violations of MRPC 1.1, 1.2, 1.3, 1.4, 1.15, 3.2, 3.4(d), 4.1, 8.4(c), 8.4(d), and 8.4(g).

IT IS FURTHER ORDERED that Philip D. Gordon be indefinitely suspended from the practice of law in the State of Kansas effective December 8, 1995.

IT IS FURTHER ORDERED that Philip D. Gordon shall make restitution as recommended by the hearing panel, plus interest, prior to the filing of any petition for reinstatement pursuant to Supreme Court Rule 219 (1994 Kan. Ct. R. Annot. 223).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 218 (1994 Kan. Ct. R. Annot. 217) and shall pay the costs of this action.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports.